## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Kevin M. Lima, a Task Force Officer with the Drug Enforcement Agency, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Detective with the Stoughton Police Department and have been assigned as a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA") since October 2011. I am currently assigned to the Organized Crime Drug Enforcement Task Force Boston Strike Force, which is a group of law enforcement agencies, including DEA, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and the U.S. Marshals Service ("USMS"). I am a graduate of the Massachusetts Criminal Justice Training Council Police Academy and have been a Stoughton Police Officer since July 2004. I became a Detective in October 2011. As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code.

2. My primary duties at the DEA include the investigation of organized narcotics traffickers. I have received training regarding narcotics investigations while attending the Massachusetts Police Academy, and have attended additional specialized training courses in furtherance of my past and current assignments. During the course of my career with the Stoughton Police Department, I have participated in at least 50 drug-related investigations that have resulted in state convictions of at least 100 individuals. As a TFO, I have participated in more than 40 federal drug-related investigations that have resulted in dozens of drug seizures and arrests.

3. I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined marijuana, cocaine, heroin, fentanyl, and other controlled substances that are, by themselves, illegal to possess. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade.

4. I have participated in various aspects of drug-related investigations. I have participated in controlled purchases of controlled substances utilizing confidential sources and undercover law enforcement agents and officers. I have prepared affidavits submitted in Massachusetts courts – both state and federal – in support of applications for criminal complaints, search warrants, tracking warrants, and/or arrest warrants. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses." I also am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, pager messages, and other means to facilitate their illegal activities.

6.  Based on my training and experience, I am familiar with the methods of operation employed by narcotics traffickers operating at the local, statewide, national and international levels, including those involving the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am familiar with the manner in which narcotics traffickers use coded, veiled, or slang-filled telephone conversations when discussing their illegal business in an effort to prevent detection, and that they often use text messages in lieu of phone calls to avoid speaking over the telephone. I am familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversation and operations.

7.  The information contained in this Affidavit is based on my own involvement in this investigation, oral and written reports of other law enforcement officers, physical surveillance, information from confidential informants/cooperating witnesses, public records, database checks, and other investigations. I make each of the following statements based upon my own personal knowledge, belief and information, and the knowledge, belief and information of other investigators involved in this investigation. The dates and times in this Affidavit are approximate.

## PURPOSE OF AFFIDAVIT

8.  This Affidavit is being submitted in support of a criminal complaint charging Carlos Miguel CONCEPCION-GUILAM. with knowingly and intentionally possessing with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi).

9.  This Affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary and sufficient to establish probable cause to believe that CONCEPCION-GUILAM has committed the above-described controlled substance offense.

## Probable Cause

10. On Wednesday, June 19, 2019, at approximately 4:09 p.m., Stoughton Police received a telephone call from the staff of the Extra Space Storage Facility, located at 20 Washington Street, Stoughton, MA. The caller claimed that facility staff had found what appeared to be narcotics inside a storage unit that was about to be auctioned.

11. The storage facility manager led responding Stoughton Police Officers to storage Unit 171 where the manager unlocked the unit. Inside, the officers saw numerous blenders covered in a white powder on the floor and several small bags containing white powder. The officers suspected that these items were narcotics and narcotics paraphernalia. The officers secured storage Unit 171, pending application for a warrant.

12. While Stoughton Police Officers applied for a warrant for Unit 171, officers learned that Unit 171 was rented on October 2, 2018, by Janice Bryant, 155 Essex Street, East Weymouth,

MA.[1] The monthly bill for Unit 171 was paid for approximately six months. Approximately 79 days before June 19, 2019, the account went past due. 73 days before June 19, 2019, Extra Space Storage staff secured Unit 171 for non-payment. Unit 171 was opened for the first time on June 19, 2019, to show prospective bidders. When they opened the unit, staff saw what they believed to be narcotics and called the police.

13.  On June 19, 2019, at approximately 7:10 p.m., the Stoughton Police Department executed Dedham District Court Search Warrant No. 1954SW0139, for Unit 171. Inside, officers found 68.8 grams of a brownish powder that field-tested positive for fentanyl, narcotics packaging materials including corner bags, diaper bags, knots, spindles, and vacuum-seal bags, and blenders with brown powder residue. Officers also found a birth certificate from Puerto Rico and a Social Security Card in the name of Jayson Torres, date of birth October 31, 1989.

14.  Search Warrant No. 1954SW0139 also authorized the search of business records of Extra Space Storage, related to Unit 171. The facility manager told officers that a "Jason" (with no 'y') Torres, date of birth October 31, 1989, 250 Pearl Street, Brockton, MA 02301, was currently renting Unit 1435 at the facility. Officers confirmed that 250 Pearl Street, Brockton, MA 02301 is a non-existent address. The individual who rented Unit 1435 provided the storage facility with a fake Massachusetts Driver's License, "S548978," and a fake address. He also pre-paid for the unit in cash at the time of rental. In fact, Jayson Torres (DOB 10/31/1989), is a real person and has a Massachusetts Driver's License but the number is S64423323, not "S548978." I have reviewed the Registry of Motor Vehicle's License photograph for Jayson Torres and he is not

---

[1] On June 24, 2019, officers went to 155 Essex Street, East Weymouth to interview the occupants. There were people inside the residence but none would come to the door when officers knocked. Emergency services have responded to two overdoses at that address within the past two weeks. As of the date of this Affidavit, there is no known connection between Janice Bryant and CONCEPCION-GUILAM.

5

CONCEPCION-GUILAM. As of the date of this Affidavit, I am not aware of any connection between Torres and CONCEPCION-GUILAM.

15. Stoughton Detectives contacted the Massachusetts State Police K-9 East Unit to conduct a search of Unit 1435. Trooper McSweeny and K-9 Scully conducted a search of the hallway that serves Unit 1435. K-9 Scully alerted to Unit 1435, indicating the odor of narcotics.

16. Based on the information connecting Unit 171 to Unit 1435, and the positive alert by a certified narcotics K-9 in front of Unit 1435, Stoughton Police sought a warrant for Unit 1435.

17. On June 20, 2019, the Stoughton Police were granted and executed Stoughton District Court Search Warrant No. 1955SW0095, for Unit 1435. The warrant authorized the search of Unit 1435 and the business records related to Unit 1435. Unit 1435 was secured with a combination lock provided by the renter. Before searching Unit 1435, officers cut off the combination lock.

18. Inside a backpack in Unit 1435, officers seized just under three kilograms of a brown powder that appeared to be fentanyl. In the backpack officers found one kilogram in brick form, approximately 690 grams in brick form, and a vacuum-sealed bag containing 200 individual bags of brown powder. The combined weight of the 200 bags was more than one kilogram. The 690 grams in brick form field-tested positive for fentanyl.

19. Inside a shoebox in Unit 1435, officers found a black scale and 123 individually wrapped bags of a brown powder believed to be fentanyl. Inside a rolling cart, officers found an additional 223 individually wrapped bags of brown powder believed to be fentanyl and five individually wrapped plastic bags that contained a hard white substance believed to be crack cocaine. Inside a cardboard box officers located two white pills in a bag. The items described above that were not field-tested are pending transportation to the DEA Northeast Drug Laboratory

for testing as of the date of this Affidavit. Officers also found a box for a Ninja brand blender. A Ninja Blender had been found earlier in Unit 171.

20. After the warrant was executed, officers set up surveillance in the area of the storage unit. At approximately 7:39 p.m., a black Dodge Durango, bearing Tennessee license plate number 2P75V7, approached the gate of the facility. The Durango passed through the gate, went directly around the main building and stopped at the door that allows access to the second floor. Unit 1435 is on the second floor. The driver, later identified as CONCEPCION-GUILAM, got out of the Durango, entered the door and went to the second floor. Surveillance officers saw CONCEPCION-GUILAM go directly to Unit 1435 and open the closed unit door. (Although Unit 1435 had previously been secured with a combination lock, investigators had cut off the lock before executing a search of Unit 1435.) Searching officers had taken all of the suspected contraband out of the unit and left a copy of the search warrant in the unit. CONCEPCION-GUILAM closed the door, ran out of the building and got into the Durango.

21. CONCEPCION-GUILAM put the Durango in reverse. When he did, officers moved to arrest him. One officer, in a marked cruiser with its lights and sirens activated, blocked CONCEPCION-GUILAM's path. CONCEPCION-GUILAM applied the brakes for a second and then rammed his vehicle into the front right corner of the cruiser. CONCEPCION-GUILAM was unable to get away and was taken into custody.

22. CONCEPCION-GUILAM was the sole occupant of the Durango. In CONCEPCION-GUILAM's sweatshirt pocket, arresting officers found a bundle of cash that proved to be $486. In his pants pocket, officers found three small plastic bags containing brown powder. These bags appear to be the same size as the bags seized from Units 171 and 1435 and the powder in them is the same color as the suspected fentanyl seized from Units 171 and 1435.

CONCEPCION-GUILAM also had a set of keys to the Durango and a wallet. In the wallet was a New Jersey Driver's License in the name of Carlos Miguel CONCEPCION-GUILAM, and two $100 bills. In the Durango officers also found two cellphones.

23. In order to access the storage facility, renters must enter a code at the front gate. After the incident on June 20, 2019, officers learned that to gain access to the storage facility, CONCEPCION-GUILAM had used a code for Unit 137, not Unit 171 or Unit 1435. Officers have since learned that, on June 21, 2019, at approximately 3:45 a.m. someone accessed Unit 137. A K-9 alerted to the scent of narcotics at Unit 137. Officers obtained a warrant to search Unit 137 on June 21, 2019 but no contraband was found inside.

**CONCLUSION**

24.     Based on the information set forth above, I believe probable cause exists to believe that CONCEPCION-GUILAM possessed with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi).

I, Kevin M. Lima, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

_____
KEVIN M. LIMA
DEA TASK FORCE OFFICER

Subscribed and sworn to me this the Jun 25, 2019 th day of June 2019.

_____
HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

9